IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                           No. CR 10-1760 JB

MICHAEL HARMON,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order and Request for Expedited Hearing, filed July 2, 2010 (Doc. 16). The Court held a hearing on July 12, 2010. The primary issue is whether the Court should vacate or amend the Honorable W. Daniel Schneider, United States Magistrate Judge's Detention Order Pending Trial, filed May 18, 2010 (Doc. 8). Because the Court is concerned with the transient nature of Defendant Michael Harmon's history, because of his history of failures to appear when required by the state courts, and because he has history of violent crimes, the Court concludes that he is both a flight risk and a danger to the community, and that no condition or combination of conditions will mitigate those risks to acceptable levels. Accordingly, the Court will grant the request for an expedited hearing, but will deny Harmon's appeal of Judge Schneider's detention order and leave Harmon in detention pending his trial.

**FACTUAL BACKGROUND**

Harmon is 50 years old. From age seven to seventeen, Harmon lived on the streets and in shelters in Chicago, Illinois. See Pretrial Services Report at 1 (completed May 17, 2010). He served

in the United States Marine Corp from 1978 to 1981, and was discharged honorably. See Appeal at 3.

Harmon has been a resident of Prescott, Arizona for the past eleven years. See Appeal at 3; Pretrial Services Report at 1 (completed May 17, 2010). Harmon has been employed in a variety of occupations in Prescott, including bus driver, landscaper, maintenance worker, and house cleaner for a mortgage foreclosure company. See Appeal at 3. He receives a monthly disability income check for a disability related to serious problems with his back and spine. See Appeal at 3. According to Harmon's fiancée, Christina Wood, age 24, until a year ago, Harmon had no stable residence and was leading a transient lifestyle in Prescott. See Pretrial Services Report at 1. Before his arrest, Harmon was living with Wood in Prescott. Wood met Harmon at a shelter where they were both recovering from substance addictions. Harmon has been married three times before, and has four children from his first marriage. Harmon reports that he has infrequent contact with his children. See Pretrial Services Report at 1.

    **1.**    **Harmon's Mental Health.**

Harmon was diagnosed with depression and anxiety in 1992, and has also been diagnosed with Post Traumatic Stress Disorder ("PTSD") and bi-polar disorder. See Appeal at 3. He has taken medication for his bi-polar disorder, and he has taken other medication on and off over the years for his other mental conditions. See Appeal at 4. Harmon reports that, in the past, he has heard voices, and he has attempted suicide twice. See Pretrial Services Report at 2. Harmon reports that he discontinued taking medication for his bi-polar disorder a year ago, but believes that he would benefit from taking his medication again. See Pretrial Services Report at 2. Harmon is under the care of Dr. James Manley with the Veterans Administration Hospital in Prescott, who counsels and treats Harmon's mental health issues, and his abuse of alcohol, methamphetamine, and crack

cocaine.  See Appeal at 4; Pretrial Services Report at 2.

    **2.**    **Facts of the Charged Offense.**

On May 14, 2010, on Interstate Highway 40 near Grants, New Mexico, an officer conducted a traffic stop of Harmon's vehicle.  Harmon informed the officer that he lived in Prescott, Arizona, and was traveling to Flint, Michigan, to visit his daughter, who was graduating from college.  See United States' Response to Defendant's Appeal of Detention Order at 4, filed July 9, 2010 (Doc. 18).  He told the officer that he did not know the name of the college, and he stated that he was only staying in Flint until May 17.  See Response at 4.  Harmon also told the officer that the vehicle he was driving belonged to a friend in Phoenix, Arizona.  The officer observed that the vehicle was registered in Michigan.  Due to Harmon's inconsistent answers and Harmon's visible nervousness, the officer asked Harmon's consent to search the vehicle.  See Response at 4.  After obtaining Harmon's consent to search, the officer discovered in Harmon's spare tire several packages of a leafy green substance and several packages of a white powdery substance.  See Appeal at 3.  Harmon denies that the marijuana and cocaine located in the spare tire are his, and denies any knowledge of their presence in the vehicle.  See Appeal at 3.  The officer arrested Harmon.

**PROCEDURAL BACKGROUND**

Harmon is currently charged with one count of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) -- possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of cocaine -- and one count of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) -- possession with intent to distribute less than 50 kilograms of a mixture and substance containing a detectible amount of marijuana.  See Indictment, filed June 10, 2010 (Doc. 11).

Judge Schneider held a detention hearing on May 18, 2010.  At the detention hearing, Assistant United States Attorney James Tierney moved to detain Harmon.  Mr. Tierney informed

Judge Schneider that Harmon has been arrested eighteen times, has failures to appear, and has a mental health condition and a history of drug and alcohol abuse. Mr. Tierney stated that Harmon is a poor candidate for pre-trial release, and argued that Harmon is a danger to the community and a flight risk.

Harmon's attorney, Benjamin Gonzales, argued that Pretrial Services recommended Harmon's release on his own recognizance with a list of conditions of release, including required mental health counseling. Mr. Gonzales argued that Judge Schneider should strongly consider the recommendation. He also argued that Harmon was receiving treatment for his mental illness and substance abuse. Mr. Gonzales conceded that Harmon has a number of arrests and some convictions, but argued that Harmon has been compliant with the terms of his probation.

Mr. Tierney argued that the presumption of detention applies in Harmon's case and further contended that the pretrial services report indicates that Harmon stopped taking medication for his mental illness. Judge Schneider stated, while he gives great weight to the Pretrial Services Report, in this case, Harmon's criminal history coupled with the presumption indicated that Harmon should be detained. Judge Schneider found, by a preponderance of the evidence, that the presumption favoring detention pursuant to 18 U.S.C. § 3143(e) applies, and that based on Harmon's history, there is a serious risk that Harmon would not appear for court proceedings as required. See Detention Order Pending Trial.

Between the time of the detention hearing before Judge Schneider and the filing of Harmon's appeal, Pretrial Services obtained additional information regarding Harmon's criminal history. Pretrial Services learned that Harmon has had compliance issues with his conditions of probation, instances of failure to appear, failures to pay fines, a felony escape charge, battery charges, and additional jail terms that the original pretrial services report did not address. In light of the

additional information, Pretrial Services has reassessed its recommendation and recommends that Harmon be detained.

Harmon moves the Court to vacate or amend Judge Schneider's detention order, pursuant to the right of de novo appeal set forth in 18 U.S.C. §§ 3145(b) and (c).  See Appeal at 1.  Harmon argues that, although he is charged with an offense which raises the presumption of danger and flight risk, under 18 U.S.C. § 3142(e), it is a rebuttable presumption, and the presumption alone is "seldom sufficient."  Appeal at 5.  Harmon further contends that the factors in 18 U.S.C. § 3142(g) do not weigh in favor of his detention, but rather show that reasonable conditions of release can be fashioned to assure that Harmon is neither a flight risk nor a danger to the community. See Appeal at 7.  Harmon argues that the first factor -- the nature and circumstances of the offense -- weighs in his favor, because Harmon cooperated in allowing the officer to search his vehicle and because Harmon borrowed the vehicle.  See Appeal at 7.  Harmon argues that the second factor -- the weight of the evidence -- indicates that drugs were found in the vehicle Harmon drove, but a jury will have to decide whether circumstantial evidence is strong enough to overcome Harmon's sworn denial of knowledge of the presence of the drugs in the vehicle.  See Appeal at 8.  Harmon further argues that his criminal history may reflect a substance-abuse problem, but because of the nature and remoteness of his crimes, the Court should not consider Harmon any more dangerous than Pretrial Services originally assessed in its initial report recommending release with conditions. See Appeal at 8-9.  Harmon argues that his updated criminal history does not show him to be any more of a flight risk or danger to the community than the history originally presented to Judge Schneider.  See Appeal at 9.  Finally, Harmon argues that release to a third-party custodian would provide adequate conditions to ensure his appearance and mitigate any risks of danger to the community.  See Appeal at 9-10.  Harmon proposes three options: (I) release to the third-party

custody of his daughter, Calvitta Collins, who lives in Mount Morris, Michigan; (ii) release to the third-party custody of his employer, Denny Swartwout, who lives in Prescott; or (iii) release to the third-party custody of the La Posada Halfway House in Albuquerque, New Mexico. See Appeal at 9-10. Harmon argues that a central part of his proposed release plan to Prescott is the continuance of his treatment with Dr. Manley. See Appeal at 12.

In response, Plaintiff United States of America argues that the Court should deny Harmon's appeal. See United States' Response to Defendant's Appeal of Detention Order at 2, filed July 9, 2010 (Doc. 18). The United States argues that the factors in § 3142(g) weigh against Harmon's release. It argues that the first factor considering the nature and circumstances of the offense weighs in favor of detention, because Harmon is charged in Count 1 with a serious drug offense under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), invoking the rebuttable presumption of detention. See Response at 3. The United States also argues that the weight of the evidence against Harmon is strong, as he was in sole possession of the vehicle in which the cocaine and marijuana was discovered and the evidence shows that Harmon exhibited nervousness when speaking with the officer at the traffic stop and gave inconsistent answers. See Response at 4. The United States further argues that Harmon's criminal history, dating back to 1979, and which consists of both crimes of violence and drug offenses, weighs in favor of detention. See Response at 4. Moreover, Harmon has an active warrant in Michigan for failure to appear. See Response at 4. Finally, the United States contends that Harmon's history of involvement with drugs is a strong indicator that he will continue to be involved with drugs if released and that such conduct poses a danger to the community. See Response at 5.

At the hearing, Mr. Gonzales argued that the third-party custodians whom Harmon has proposed are willing to fulfill the duties and obligations of such custodianship. See Tr. at 5:12-6:7

(taken July 12, 2010)("Tr.")(Gonzales).[1]  Mr. Gonzales contended that, while Harmon's alcohol and drug abuse is troubling, he has a safety net of medical and mental health treatment to which he can turn.  See id. at 9:14-10:5 (Gonzales).  Mr. Gonzales argued that many of the battery charges in the new information Pretrial Services received were dismissed and the one to which Harmon pled guilty occurred eighteen years ago, and thus should not be justification for Harmon's detention.  See id. at 11:5-12:6 (Gonzales).  Mr. Gonzales further argued that Harmon does not remember any instances of failing to appear or failing to pay fines.  See id. at 13:14-22 (Gonzales).  Assistant United States Attorney James Braun argued that Harmon has a lengthy criminal history, multiple failures to appear, as well as probation violations.  See Tr. at 18:7-11 (Braun).  He contended that these are indicators that Harmon is not someone who is amenable to court orders or supervision, and that the facts cut against Harmon's release.  See id. at 18:12-17 (Braun).

## LAW REGARDING PRE-TRIAL DETENTION

Title 18 United States Code § 3145(b) states, in relevant part: "Review of a detention order. -- If a person is ordered detained by a magistrate . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  In United States v. Cisneros, 328 F.3d 610 (10th Cir. 2003),  the United States Court of Appeals for the Tenth Circuit considered proper jurisdiction of a motion pursuant to 18 U.S.C. § 3145(a) and stated: "The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction."  United States v. Cisneros, 328 F.3d at 615.  The Tenth Circuit followed the guidance of the concurring opinion in United States v. Evans, 62 F.3d 1233 (9th Cir. 1995)(Wallace, C.J., concurring), which stated: "Only that district court [i.e., the district

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

court with original jurisdiction over the offense] has the authority to review the magistrate judge's order." United States v. Cisneros, 328 F.3d at 615 (citing United States v. Evans, 62 F.3d at 1239 (Wallace, C.J., concurring)). The Tenth Circuit explained that the court having original jurisdiction is "the district [court] in which the indictment charging [the defendant] was returned and in which the prosecution is pending." United States v. Cisneros, 328 F.3d at 615. See United States v. Torres, 86 F.3d 1029, 1031 (11th Cir. 1996)(holding that United States, seeking review of a release order, must appeal to indicting jurisdiction).

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3156, a court generally cannot detain an accused unless it finds "that no conditions or combinations of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). See 18 U.S.C. § 3142(b). The United States bears the burden of showing that the defendant is either a flight risk or a danger to the community. Dangerousness must be established by clear-and-convincing evidence. See 18 U.S.C. § 3142(f)(2)(B)("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Risk of flight must be established by a preponderance of the evidence. See United States v. Cisneros, 328 F.3d at 612.

The Tenth Circuit also has set forth factors a court must consider when deciding whether an individual should be released or detained:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider:
>
> > (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Cisneros, 328 F.3d at 617 (citing 18 U.S.C. § 3142(g)). "If, after the hearing and consideration of the above factors, a judicial officer orders that a defendant be detained, the order must 'include written findings of fact and a written statement of the reasons for the detention.'" United States v. Cisneros, 328 F.3d at 617 (quoting 18 § 3142(i)(1)). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d at 616 n.1.

## **ANALYSIS**

Harmon moves the Court to vacate or to amend Judge Schneider's detention order. The Court conducts a de novo review of Judge Schneider's detention order, and must make its own determination whether pretrial detention is proper or whether there are conditions or a combination of conditions that will ensure Harmon's appearance and protect the community. See United States v. Cisneros, 328 F.3d at 616. Having conducted such review, the Court concludes that there is no condition or combination of conditions to provide such assurances.

**I.  HARMON IS A FLIGHT RISK, AND THERE IS NO CONDITION OR COMBINATION OF CONDITIONS THAT WILL ENSURE HIS APPEARANCE.**

While there is a presumption of detention in a case involving the charge in Count 1 of the Indictment -- possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) -- the burden remains on the United States to show that Harmon is a flight risk or a danger to the community.  See United States v. Villapudua-Quintero, 308 Fed. Appx. 272, 273 (10th Cir. 2009)("Once [a] presumption is invoked, the burden of production shifts to the defendant," but "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  In determining whether there are conditions of release that will reasonably assure Harmon's appearance and the safety of the community, the Court weighs four factors: (i) the nature and circumstances of the offense; (ii) the weight of the evidence against Harmon; (iii) Harmon's history and characteristics, including his character, family ties, employment, financial resources, length of residence, and criminal history; and (iv) the nature and seriousness of the danger to any person or the community that Harmon's release from detention would pose.  See 18 U.S.C. § 3142(g).

The nature and circumstances of the offense and the weight of the evidence are factors favoring detention.  Harmon is charged with serious drug offenses.  Count 1 of the Indictment for possession with intent to distribute the cocaine carries a statutory maximum sentence of forty years and a mandatory minimum of five years in prison.  Moreover, the evidence against Harmon is strong.  During the course of the traffic stop, Harmon exhibited nervousness that did not subside and gave inconsistent answers to the officer.  He was in sole possession of the vehicle that contained cocaine and marijuana concealed in the spare tire.  While Harmon says he was using a borrowed car

-10-

and did not know the drugs were in the vehicle, that mitigating evidence does not undercut significantly the strength of the evidence against him.

Harmon's history and characteristics also weigh in favor of detention. The risk that Harmon will not appear concerns the Court, as it concerned Judge Schneider at Harmon's May 18, 2010 detention hearing. Harmon does not have a stable residence and appears to have a fairly mobile lifestyle. The Court recognizes that he recently appears to be doing better, living with Wood in Prescott, but he also spent a number of years as a child and as an adult on the streets. Harmon met Wood at a shelter, and she has a history of substance abuse too. Given Harmon's transient lifestyle, the Court believes there is a serious risk of Harmon not appearing for court hearings. The amended criminal history information Pretrial Services received after Judge Schneider's hearing reenforces the Court's concerns. It reflects multiple failures to appear and failures to pay fees and costs. Because Harmon represents that he does not remember the failures to appear, the Court does not know why he did not appear, but the Court recognizes that it is often the case on urban streets that transient individuals do not receive their mail and it is difficult to get in contact with them without a permanent address; the Court believes such circumstances may have been present here. Along that same reasoning, the Court understands that it is not completely unrealistic that Harmon has an outstanding arrest warrant in Michigan to which he claims little knowledge or misidentification. Harmon has some ties to Michigan and has spent some time there, and thus it is not unrealistic that he may have an outstanding arrest warrant there.

The Court does not believe that there are conditions or a combination of conditions to satisfactorily mitigate Harmon's risk of flight to an acceptable level. Harmon's daughter does not appear to be an appropriate third-party custodian, as Harmon admitted to Pretrial Services that he has had inconsistent contact with her. Pretrial Services has been unable to contact Swartwout, but

the Court is concerned about the appropriateness of a custodianship in which Harmon would not be living with the custodian, but rather would be living with Wood. Given that the relationship between Harmon and Wood is rather recent -- a ten-month relationship -- and given Wood's substance abuse history, she is not an appropriate custodian, and Harmon does not argue otherwise. The Court is concerned that neither Swartwout nor Wood, alone or in combination, would provide sufficient supervision of Harmon to mitigate his risk of non-appearance. The Court also does not believe that La Posada is an adequate placement in these circumstances. There is no assurance that Harmon will receive employment in Albuquerque or receive the kind of mental healthcare he was receiving in Arizona. The Court does not believe that, given Harmon's history and characteristics, the halfway house provides sufficient safeguards to reduce his risk of flight.

The Court agrees with Harmon that the Arizona situation is the most appealing, but in the end, finds it inadequate. Dr. Manley indicates that he has "worked with [Harmon] sporadically[.]" Letter from James Manley to the Court at 2 (dated June 9, 2010), filed July 2, 2010 (Doc. 16-1). It thus is not clear that he is receiving much support in Arizona. The United States Probation Office has to see if the Veterans Affairs services that Dr. Manley is providing in Arizona could be duplicated in Albuquerque, but has not been successful in assuring a duplication of such services. In any case, the safety net that Harmon has is there. The Court is concerned that Harmon could, at any time, return to his truant ways, and not appear at court proceedings as required, requiring the United States Marshals to go find and arrest him. Combined with his mental-health history, the Court is concerned that release might put such officers in danger.

## II.     **HARMON IS A DANGER TO THE COMMUNITY.**

Judge Schneider appears to have made a finding regarding Harmon's risk of danger to the community by a preponderance of the evidence. In any case, the Court believes the new information

Pretrial Services received regarding Harmon's criminal history is sufficient for the Court to find, by clear-and-convincing evidence, that Harmon presents a danger to the community. First, Harmon has a history of battery arrests, one for which he has served time in jail. He also has a felony escape charge on his record. The Court believes that Harmon's criminal history demonstrates that he presents a risk of being a danger to the community and, in particular, to the arresting officers if he does not appear for court. The Court is also concerned about Harmon's substance abuse and addictions. The Court agrees with Mr. Gonzales that Harmon's criminal history seems to relate to this abuse. Coupled with Harmon's mental illness, which he is not currently controlling with medication on a regular basis, Harmon's substance abuse, history of batteries, and mental health make him a danger to the marshals that may be tasked with enforcing a warrant for Harmon's arrest in the future.

In sum, the Court believes that there is no condition or combination of conditions of release that will reasonably assure the appearance of Harmon and assure the safety of the community. In addition to the § 3142(g) factors weighing in favor of detention, the Tenth Circuit has advised that, even when the presumption in favor of detention is rebutted, the presumption "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Villapudua-Quintero, 308 Fed. Appx. at 273. The Court cannot take the risk that Harmon will not appear or will harm society or marshals, and the Court finds that the evidence supports upholding Judge Schneider's detention order and detaining Harmon pending his trial.

**IT IS ORDERED** that the Defendant's Appeal of Detention Order and Request for Expedited Hearing is granted in part and denied in part. The Court grants the request for an expedited hearing. The Court denies the appeal of the detention order. Defendant Michael Harmon shall remain in the custody of the United States Marshals pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
James R.W. Braun
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Benjamin A. Gonzales
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*